**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROSA H. MOLINA VIROLA,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 18-CV-4778** |
| | : | |
| **COMMISSIONER OF** | : | |
| **SOCIAL SECURITY,** | : | |
| **Defendant.** | | |

**RICHARD A. LLORET**
**U.S. Magistrate Judge**                                    **January 21, 2020**

### MEMORANDUM OPINION

Ms. Rosa Molina Virola ("the Plaintiff" or Ms. Molina) appeals from the denial of her Social Security claim. ECF Doc. No. 2. She contends that remand is appropriate, because 1) the Administrative Law Judge ("ALJ") erred by failing to properly resolve conflicts between the Vocational Expert ("VE") and the Dictionary of Occupational Titles ("DOT"), 2) the ALJ failed to properly explain his reasons for rejecting some limitations described by a consulting physician, and 3) the ALJ was not properly appointed under the Constitution's Appointment Clause. Doc. No. 19, Plaintiff's Brief ("Pl. Br.") at 2.

Before addressing Ms. Molina's arguments about whether she is disabled, I must address her claim that the presiding ALJ's appointment was improper under the Appointments Clause of the Constitution. Pl. Br. at 9 (citing to *Lucia v. SEC*, 138 S. Ct. 2044 (2018)). The Commissioner of Social Security ("the Commissioner") argues that Ms. Molina forfeited this claim by not challenging the ALJ's appointment in the agency proceeding below. Def. Br. at 16. After careful review, I find that the ALJ was improperly appointed under the Constitution, and that Ms. Molina did not forfeit her Appointments

Clause claim because there is no requirement that a plaintiff exhaust all issues before the SSA. I further find it would have been futile for her to raise the claim before the agency. Therefore, Ms. Molina's request for review is granted, and this matter is remanded to the Commissioner for further proceedings in accordance with this opinion.

Because I am remanding the case based on the *Lucia* claim, it may be unnecessary for me to address Ms. Molina's other claims. Nevertheless, to expedite the processing of this case in the event of appeal, I find that the ALJ erred by failing to require the VE to explain an inconsistency between the VE's opinion and information contained in the DOT. I therefore direct that the matter be remanded for further review by a Constitutionally appointed ALJ, consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

Ms. Rosa Molina Virola ("the Plaintiff" or "Ms. Molina") was born on November 7, 1973, and was therefore a "younger individual" under the applicable regulations. R. 232; 20 C.F.R. §§ 404.1563(c), 416.963(c). Though she had a twelfth-grade education in Puerto Rico, she could not read, write, or understand English. R. 96-97, 275. Ms. Molina had experience working as a housekeeper/cleaner and as a lot attendant, but stopped working in June 2010, allegedly due to her impairments. R. 97, 104, 276.

Ms. Molina filed an application for Disability Insurance Benefits (DIB) on December 30, 2014 and an application for Supplemental Security Income (SSI) on February 20, 2015. Administrative Record ("R.") 16, 232-39, 242-43. After being denied administratively, R. 127, 128, Ms. Molina requested a hearing before an Administrative Law Judge (ALJ). R. 127-28, 231. Ms. Molina testified through a Spanish language interpreter at the hearing on September 26, 2017, and a vocational expert testified, as well. R. 90-108. On December 8, 2017, the ALJ issued an unfavorable decision, finding

that Ms. Molina was not disabled.[1] R. 16-32. The Appeals Council received a request for review on January 2, 2018 and denied the request by an order entered September 13, 2018. R. 6. Ms. Molina brought this civil action for judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to my jurisdiction, SSA has filed its answer along with the administrative record, and the parties have submitted their briefs. ECF Doc. Nos. 11 (consent), 12 (Defendant's Answer), 13 (administrative record), 19, 22 (Defendant's Brief ("Def. Br.")), 23 (Plaintiff's Reply Brief ("Pl. Reply").

## STANDARD OF REVIEW

In reviewing an ALJ's disability determination, I must "determine whether it is supported by substantial evidence." *Newell v. Commissioner of Social Security*, 347 F.3d 541, 545 (3d Cir. 2003) (citing to *Richardson v. Perales,* 402 U.S. 389, 390 (1971)); *see also* 42 U.S.C. § 405(g). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938))). Substantial evidence is "more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (citation omitted). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Nevertheless, I exercise "plenary review over questions of law." *Newell,* 347 F.3d at 545 (citation omitted).

---

[1] The ALJ evaluated the case using the familiar five-step sequential process until a finding of "disabled" or "not disabled" was reached. R.17-19; *see Hess v. Commissioner Social Security*, 931 F.3d 198, 201 (3d Cir. 2019). The sequence requires an ALJ to assess whether a claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; (3) has an impairment or combination of impairments that meet or equal the criteria listed in the social security regulations and mandate a finding of disability; (4) has the residual functional capacity to perform the requirements of his past relevant work, if any; and (5) is able to perform any other work in the national economy, taking into consideration his residual functional capacity, age, education, and work experience. *See* 20 C.F.R. § 404.1520(a)(4)(i)–(v).

An ALJ must provide sufficient detail in his opinion to permit meaningful judicial review. *Burnett v. Commissioner of Social Security Admin.*, 220 F.3d 112, 120 (3d Cir. 2000). When dealing with conflicting medical evidence, the ALJ must describe the evidence and explain his resolution of the conflict. *See Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999).

The Appointments Clause challenge is subject to "plenary review." *See National Labor Relations Board v. New Vista Nursing and Rehabilitation*, 870 F.3d 113, 122 (3d Cir. 2017); *Willy v. Administrative Review Bd.*, 423 F.3d 483, 490 (5th Cir. 2005) (reviewing Appointments Clause challenge "*de novo.*").

## DISCUSSION

### A. This case must be decided *de novo* by a properly appointed ALJ.

Ms. Molina contends that the ALJ who decided her case was not duly appointed, under the Constitution's Appointment Clause. Pl. Br. at 9 (citing *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018)). The Commissioner concedes that the ALJ in this case was not properly appointed. Def. Br. at 16-17, n.4. On July 16, 2018, well after the ALJ's decision in this case, and well after Ms. Molina's request for review, the Commissioner ratified the appointments of SSA ALJs and Appeals Council administrative appeals judges to address any Appointments Clause questions. *Id.* The Commissioner argues that the Appointments Clause error was forfeited by Ms. Molina because she failed to raise it below. *Id.* at 16-27.

The holding in *Lucia* and its application to Social Security claims has been the subject of much debate in the lower courts. *See, e.g.*, *Dove-Richardson v. Berryhill*, C.A. No. 19-35-LPS-MPT, 2020 WL 109034 (D. Del. 1/9/2020) (remanding based on a *Lucia* claim); *Harold v. Saul*, 2019 WL 6003494 *5 n.8 (E.D. Pa. 2019) (noting cases). The

issue is pending before the Third Circuit. *See Bizarre v. Commissioner,* No. 19-1773

(April 17, 2019). I have discussed the issue at length, most recently in *Harold*. As I said

in *Harold*,

> [i]t remains the case, with respect to both the Appeals Council and the ALJ, that neither the Social Security Act nor the agency's regulations impose an issue exhaustion requirement. *Sims* made this clear in 2000. The Commissioner now asks the lower courts to impose a judicially created issue exhaustion requirement, even though the Supreme Court has already said in *Sims* that such a requirement was inappropriate in the absence of a statutory or agency choice to embrace issue exhaustion. What is more, neither Congress nor the Agency, in the 19 years since *Sims,* have acted to impose such a requirement.
>
> This is not a happy historical context for the Commissioner's position. If neither the agency nor Congress have seen fit to impose an issue exhaustion requirement, after *Sims*, it seems almost forlorn for the Commissioner to ask the lower courts to impose one. The same reasons that counseled the Supreme Court, Congress and the Social Security Administration to abstain from imposing issue exhaustion – the non-adversarial nature of the Social Security process – should counsel lower courts to follow the same path.
>
> *Id.* at *4.

For the reasons explained in *Harold*, I find that the claim was not forfeited, as

there is no issue exhaustion requirement under the Social Security statutes or

regulations, nor is it appropriate to impose a judicially created rule. *Id.* Therefore, I will

order a remand to allow the SSA to assign a different, constitutionally appointed ALJ to

review the case and make his or her independent decision.

### B. Remand is required to permit the ALJ to resolve conflicts between the VE's testimony and DOT language development requirements.

Plaintiff contends that there was a conflict between DOT language requirements

and the VE's opinion that Ms. Molina could perform certain jobs, a conflict that required

explanation. Pl. Br. 2-4. The Commissioner contends that there is no explicit

requirement in the DOT that a claimant's language development be in English, and that

therefore there is no "conflict" that must be explained by the VE. Def. Br. at 12 ("The

DOT does not specifically address illiteracy in English."). I find the Commissioner's argument unconvincing.

The DOT should be read not as requiring development in *any* language, but in one particular language, the one in which the requirement itself is written: English. This is implicit in the introduction to the DOT's "general education development" section, which precedes the description of language development: "[t]he description of the various levels of language and mathematical development are based on the curricula taught in schools throughout the United States." Curricula "taught in schools throughout the United State" are taught in English. Many other languages are taught as subjects, and some specialized schools teach all courses in a language other than English, but English is the only language that is used in school curricula "<u>throughout</u> the United States."

The SSA regulations also recognize that the language development requirement should focus on English language development, commenting that "the inability to communicate in English may significantly limit an individual's scope . . ." 20 C.F.R. § 404, Subpart P, App. 2, ¶ 202.00(g). The point seems obvious. While the inability to communicate in English may have less significance for jobs at an "unskilled level," *id.*, the DOT does not presume that it has no significance, because even unskilled jobs are assigned a language development level of 1. This makes sense. Even unskilled laborers need to be able to follow simple instructions. In short, Ms. Molina's inability to communicate in English needs to be taken into account by the vocational expert, because the DOT presumes that at least some capacity to communicate in English is necessary even for unskilled jobs.

In this instance the VE explained that the inability to communicate in English did not disqualify Ms. Molina from performing a job as a type-copy examiner, because the job did not involve reading English, but only making sure the type was within the proper borders. R. 106. What the VE did not explain was how Ms. Molina's inability to speak or understand spoken English would impact her ability to do the job. The DOT language requirements assume at least rudimentary competence in the English language. The VE needs to explain whether, based on her experience, the job can be performed even by someone who can neither speak nor understand English, and therefore cannot follow simple instructions given in English. This the VE did not do, nor did the VE explain how Ms. Molina was to function at the table worker and bench hand jobs, which DOT also presumes require some minimal competence in English.

Reading the DOT language requirement this way does not require a "per se" finding of disability for someone who does not speak or write English. *See* Def. Br. 12. SSA regulations simply require that the VE explain whether, based on her experience, the job can in fact be performed without speaking or writing English, notwithstanding the DOT presumption. That is not an impossible burden, or even a particularly difficult burden, to impose on an ALJ or VE. If the SSA wishes to amend its regulations to deal with this issue categorically, rather than case by case, it is free to do so. In the meantime, when a claimant does not speak or understand English an ALJ should require evidence addressing the DOT's presumptive language development requirements as part of the information elicited from the VE about the claimant's ability to perform work.

**C. The ALJ and VE properly took into account Ms. Molina's left-hand limitations.**

The ALJ limited Ms. Molina to occasional reaching and handling on her left hand, but not her right. R. 23. Plaintiff contends that the VE should have explained a discrepancy between the DOT and the VE's opinion centering on Ms. Molina's reaching and handling capabilities. Pl. Br. at 4-5. The parties agree with the VE that there is no distinction made in the DOT between left/right reaching and handling. Pl. Br. 5; Def. Br. 13; R. 107. Thus, there is no definitional requirement that a limitation on the non-dominant left hand determines an overall limitation on reaching and handling. There is no explicit discrepancy between the DOT job description information and the VE's opinion. The VE explained that he took into account the limitation to Ms. Molina's left hand and opined that she could still perform the jobs identified by the VE. R. 107. The RFC determined by the ALJ did the same. There was no error.

**D. The ALJ and VE properly took into account Ms. Molina's reasoning level.**

Plaintiff contends that the RFC did not properly take into account Ms. Molina's reasoning level, based on DOT requirements for the jobs identified by the VE. The ALJ limited Ms. Molina "to performing routine tasks, [and] to simple work-related decisions. . ." R. 23. The job of type-copy examiner requires reasoning level 2; the jobs of bench hand and table worker require reasoning level 1. The DOT defines reasoning level 1 as the ability to

> [a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

*See* https://occupationalinfo.org/appendxc_1.html#III, accessed on 1/14/2020 at 11:41.

The DOT defines reasoning level 2 as the ability to

> [a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

*Id.*

The reasoning level determined by the ALJ was not limited to the ability to follow simple one or two-step instructions, which might trigger concern about her ability to perform jobs that require reasoning level 2. *See Harden v. Commissioner of Social Sec.*, No. 13–906, 2014 WL 4792294, at *5 (W.D. Pa. 2014). Instead, the ALJ determined that Ms. Molina can perform routine tasks and make simple work-related decisions. Such a limitation does not disqualify the plaintiff from work that requires reasoning level 2, which requires the ability to follow "detailed but uninvolved written or oral instructions [and to] [d]eal with problems involving a few concrete variables in or from standardized situations." The ALJ's determination certainly does not disqualify Ms. Molina from jobs that only require reasoning level 1. Since two of the jobs identified by the VE require only reasoning level 1, there are jobs in the national economy for which Ms. Molina is qualified, even if there is a question about her ability to cope with a job that requires reasoning level 2 (type-copy examiner).

### E. The newly appointed ALJ may reconsider the consulting examiner's opinion on remand.

Because the case will be reviewed by another ALJ on remand, it is not necessary to decide whether the ALJ properly evaluated the medical opinion of the consulting examiner, Dr. Amundson. Pl. Br. at 7.

## CONCLUSION

For the reasons I have given, I conclude that the matter must be reversed and remanded for consideration by a different, properly appointed ALJ. I also conclude that the ALJ on remand should take testimony from the VE about the effect, if any, of Ms. Molina's language limitations on her ability to perform jobs identified by the VE and described in the DOT, taking into account the DOT's language development requirements.

**BY THE COURT:**

*s/Richard A. Lloret*
**RICHARD A. LLORET**
**U.S. Magistrate Judge**